IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.

        Plaintiff,

v.                                Case No.: 9:22-cv-80030-DMM

NICKOLAS L. DITOMMASO

        Defendant.

_____/

---

### DEFENDANT'S MOTION TO VACATE THE DEFAULT JUDGMENT, SET ASIDE THE CLERK'S DEFAULT, AND TO DISMISS THE ACTION FOR LACK OF ARTICLE III JURISDICTION, WITH INCORPORATED MEMORANDUM OF LAW

---

Defendant Nickolas L. DiTommaso respectfully moves the Court for (1) an Order pursuant to Fed. R. Civ. P. 55(c), 60(b)(4)-(6), and 60(d)(3) vacating the default judgment (DE 18) and re-opening the action and setting aside the clerk's default (DE 8); and (2) an Order pursuant to Fed. R. Civ. P. 12(b)(1) dismissing the action for a lack of Article III jurisdiction, as set forth in the incorporated memorandum of law.

Respectfully submitted,

*/s/Andrew D. Lockton*
Edward F. McHale (Florida Bar Number 190300)
Andrew D. Lockton (Florida Bar Number 115519)
MCHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:    (561) 625-6575
Facsimile:    (561) 625-6572
Email:        alockton@mchaleslavin.com
              emchale@mchaleslavin.com
              litigation@mchaleslavin.com

*Counsel for Defendant Nickolas L. DiTommaso*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF FACTS ..................................................................................................2

    A.    The Complaint ........................................................................................2

    B.    AAP's Motion for Default Judgment..........................................................2

    C.    AAP's Complaint and Motion for Default Judgment Were Filed Without Any Legal or Factual Basis and Without Article III Standing....................................3

    D.    Mr. DiTommaso's "Default" in the Underlying Proceedings ...............................4

ARGUMENTS ......................................................................................................................6

I.    THE DEFAULT JUDGMENT SHOULD BE VACATED AND THE DEFAULT SET ASIDE ................6

    A.    The Default Judgment Should be Vacated as Void Because the Court Lacked, and Lacks, Article III Jurisdiction ...................................................................7

    B.    The Default Judgment Should be Vacated Because AAP's Claim and the Judgment Was Satisfied, Released, and Discharged ............................................9

    C.    The Default Judgment Should be Vacated for Fraud on the Court.......................10

    D.    The Default Judgment Should be Vacated in the Interest of Justice ...................11

    E.    The Default Judgment Should be Modified in the Interest of Justice Because the Court Impermissibly Awarded *Both* Statutory Damages *and* Actual Damages, When Those Damages Are Only Available in the Alternative.............................12

II.    THE ACTION SHOULD BE DISMISSED FOR A LACK OF ARTICLE III JURISDICTION...............12

    A.    AAP's Complaint, Addressing Conduct Solely Based on a Third-Party's Website, Does Not Satisfy the Traceability and Redressability Requirements for Article III Jurisdiction...........................................................................14

    B.    Facially and Factually, the Complaint and AAP's Evidence Fails to Set Forth an Alleged Injury that is (1) "Fairly Traceable" to Conduct by DiTommaso and (2) Which is Redressable Through This Action .........................................................

CONCLUSION...................................................................................................................17

CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7.1(a)(3) ....................17

CERTIFICATE OF SERVICE ...........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraxis Bioscience, Inc. v. Navinta LLC,*
    625 F.3d 1359 (Fed. Cir. 2010)................................................................14

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir. 1981) ...............................................................6

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,*
    517 F.3d 1271 (11th Cir. 2008) ...............................................................9

*Campbell v. Air Jamaica Ltd.,*
    760 F.3d 1165 (11th Cir. 2005) ...............................................................13

*Casillas v. Madison Ave. Assocs.,*
    926 F.3d 329 (7th Cir. 2019) ...................................................................16

*Christian Coal. of Fla., Inc. v. United States,*
    662 F.3d 1182 (11th Cir. 2011) ...............................................................7

*Federated Life Ins. Co. v. Fifth Third Bank*
    Case No. 2:14-cv-568-FtM-38CM, 2017 U.S. Dist. LEXIS 47260 (M.D. Fla. Mar. 30, 2017)6

*Gardner v. Mutz,*
    962 F.3d 1329 (11th Cir. 2020) ...............................................................7, 12, 13, 15

*In re Engle Cases,*
    Case No. 3:09-cv-10000-J-32JBT, 2013 U.S. Dist. LEXIS 186429 (M.D. Fla. Jan. 22, 2013)
    ...................................................................................................14

*Jones v. Int'l Riding Helmets,*
    49 F.3d 692 (11th Cir. 1995) ...................................................................16

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)...............................................................................7, 8, 13

*Lewis v. Governor of Ala.,*
    944 F.3d 1287 (11th Cir. 2019) ...............................................................8, 12, 15, 16

*Live Entm't, Inc. v. Digex, Inc.,*
    300 F. Supp. 2d 1273 (S.D. Fla. 2003) ...................................................14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...............................................................................12, 13, 14, 15

CASES (CONT.)

*McCormick v. Alderholt,*
    962 F.3d 1254 (11th Cir. 2002) .................................................................7, 8, 13

*McNutt v. General Motors Acceptance Corp.,*
    298 U.S. 178 (1936)..................................................................................7, 13

*Morrison v. Amway Corp.,*
    323 F.3d 920 (11th Cir. 2003) ..........................................................................13

*Oakes v. Horizon Fin., S.A.,*
    259 F.3d 1315 (11th Cir. 2001) ...........................................................................7

*Rozier v. Ford Motor Co.,*
    573 F.2d 1332 (5th Cir. 1978) ....................................................................6, 11

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)........................................................................................15

*Stansell v. Revolutionary Armed Forces of Columbia,*
    No. 8:09-cv-2308, 2013 WL 12132057 (M.D. Fla. Apr. 29, 2013) ..........................6

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)..........................................................................................15

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009).........................................................................................13

*Sun v. Partnerships and Unincorporated Assoc'ns Identified on Schedule A, et al.,*
    Case No. 1:19-cv-06281 (N.D. Ill.) ................................................................8, 9

*Swann v. Sec'y,*
    668 F.3d 1285 (11th Cir. 2012) .........................................................................13

*TransUnion LLC v. Ramirez,*
    141 S. C.t 2190 (2021)......................................................................................16

*Travelers Indem. Co. v. Gore,*
    761 F.2d 1549 (11th Cir. 1985) .........................................................................10

*Turner v. Bank of North-America,*
    4 U.S. 8 (1799)..........................................................................................7, 13

*United States Aid Funds, Inc. v. Espinosa,*
    559 U.S. 260 (2010)...........................................................................................7

CASES (CONT.)

*Waddell v. Hemerson*,
    329 F.3d 1300 (11th Cir. 2003) ............................................................................................6

UNITED STATES CONSTITUTION

U.S. Cont.
    art. III ............................................................................................. *passim*
    art III, § 2 ...........................................................................................7, 12

U.S. CODES

17 U.S.C.
    § 504(a) .............................................................................................1, 12
    § 504(b) ...............................................................................................1
    § 504(c) ...............................................................................................1

RULES

Fed. R. Civ. P.
    12(b)(1) ..............................................................................................2, 17
    55(c) ...............................................................................................2, 6, 7, 17
    60(b) ...............................................................................................2, 6, 10
    60(b)(4) ...........................................................................................2, 7, 17
    60(b)(5) ...........................................................................................2, 7, 9, 10, 17
    60(b)(6) ...........................................................................................2, 7, 11, 12, 17
    60(d)(3) ...........................................................................................2, 6, 10, 11, 17

S.D. Fla. L. R. 7.1(a)(3) ..................................................................................17

## **MEMORANDUM OF LAW**

Plaintiff Affordable Aerial Photography, Inc. ("AAP") knowingly filed this action against Defendant Nickoloas L. DiTommaso ("DiTommaso") without any legal or factual basis, alleging copyright infringement *by DiTommaso* based solely on evidence of an act by an independent third party.  *See* DE 1 (Complaint) ¶¶ 17-21.  AAP and its counsel intentionally misrepresented material facts when filing the Complaint.  AAP and its counsel intentionally misrepresented material facts when filing the motion for default judgment.  Facially, and factually, AAP lacks article III standing for this action, and the Court lacked article III jurisdiction to enter the default judgment.  The judgment is void and should be vacated.

The *facts* demonstrate that AAP has not suffered an injury-in-fact for at least the reason that the act of alleged infringement was not an infringement; rather, it was licensed conduct of a third-party.  Indeed, prior to the suit, AAP received the license fee from that third party, pursuant to an earlier contract.  As a result, AAP did not suffer concrete harm from the identified conduct, necessary to establish standing.  Further, DiTommaso does not own, operate, or control the third party Realtor.com website where the alleged infringement occurred, and he has never created, managed, or posted information or the accused image on that third party's website.  AAP has no evidence to establish that the alleged infringing conduct—occurring on an independent third party's website—is fairly traceable to DiTommaso.   Therefore, AAP cannot establish the traceability and redressability prongs necessary for article III standing, and for this Court to have article III jurisdiction.

The Court lacks article III jurisdiction over this action, and therefore lacked the power to enter the default judgment (DE 18).  The judgment is void and should be vacated, the clerk's default should be set aside, and the action should be dismissed.  Moreover, AAP's claim, and therefore the judgment, was released pre-suit by AAP.  Further, AAP and its counsel intentionally misrepresented material facts and submitted knowingly false statements in seeking a default judgment.  Finally, the Court legally erred when granting the default judgment in that it awarded *both* statutory damages *and* actual damages, when those remedies are only available in the alternative.   *Compare* DE 18 *with* 17 U.S.C. § 504(a) (an infringer is liable for ***either*** actual damages under § 504(b) ***or*** statutory damages under § 504(c)); *see also* DE 16 pp. 13-14 (electing statutory damages instead of actual damages).  As such, to the extent that the judgment is not

determined void, it should be modified to only those damages properly awardable under the Copyright Act.

Accordingly, DiTiommoso respectfully moves pursuant to Fed. R. Civ. P. 55(c), 60(b)(4)-(6), and 60(d)(3) for an order vacating the judgment, setting aside the clerk's default, and dismissing the action pursuant to Fed. R. Civ. P. 12(b)(1).

## STATEMENT OF FACTS

### A.      The Complaint

Plaintiff filed the Complaint in this action on January 7, 2022.  DE 1.   AAP alleges that it created a photograph in 2009 titled "West Palm Beach skyline C 2009 AAP, Oct. 24, 2009" (the "Work").  DE 1 ¶ 13; *see also* DE 1 pp. 10-11.  The Work was not registered until July 7, 2015. DE 1 ¶ 14; *see also* DE 1 pp. 10-11.

AAP alleges that the Work was infringed by being "published" on the third-party Realtor.com website.  DE 1 ¶ 19; *see also* DE 1 p. 13.  AAP alleges—upon information and belief—that DiTommaso "located a copy of the Work on the internet (most likely associated with a prior MLS listing for a real estate agency that did contract with Plaintiff) and, rather than contact Plaintiff to secure a license, simply copied the Work for use in marketing his own real estate services."  DE 1 ¶ 23.  AAP alleges that DiTommaso violated AAP's rights of reproduction, public distribution, and public display of the Work.  DE 1 ¶ 30.  AAP's only evidence to support its allegations is the presence of the work on the third-party Realtor.com website and its "information and belief".  DE 1 ¶¶ 17-20, 23.

AAP also alleges that DiTommaso "has not and has never been licensed to use or display the Work," and that DiTommaso "never contacted Plaintiff to seek permission to use the Work in connection with [the] Realtor.com profile page or any other purpose."  DE 1 ¶ 21.  AAP alleges that it discovered the "unauthorized use/display of the Work in October 2021," and following that discovery, "Plaintiff notified Defendant in writing of such unauthorized use."  DE 1 ¶ 24.  AAP represented to the Court that "[t]o date, Plaintiff has been unable to negotiate a reasonable license for the past infringement of its Work."  DE 1 ¶ 24.

### B.      AAP's Motion for Default Judgment.

AAP's motion for default judgment repeated and relied on those allegations in the complaint.  DE 16 pp. 3-6, ¶¶ 12-22.  AAP's argument titled "Defendant Copied the Work" relies solely on the third-party Realtor.com webpage, without providing any evidence to connect

DiTommaso to the act of alleged infringement.  DE 16 p. 8.  Further, in arguing for willful infringement, AAP asserted:

> Here, Plaintiff took the extra step of notifying Defendant of his infringement pre-lawsuit.  Defendant ignored undersigned counsel's e-mails, Federal Express (which included a draft copy of the Complaint in this lawsuit and warned Defendant such would be filed), and telephone calls.  Defendant's refusal to pay a reasonable licensing fee and refusal to respond to multiple infringement notices demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that his conduct infringed upon Plaintiff's exclusive copyrights in the Work.

DE 16 p. 6.

Along with AAP's motion, its counsel submitted a declaration of AAP's principal, Robert Stevens, which he made under penalty of perjury.  DE 16-1.  Mr. Stevens swore to the Court that the "typical range of fees I would charge for the type of non-exclusive commercial use involved in this lawsuit (meaning use for purposes of advertising or promoting the licensee's business) and displaying on the internet one of my copyrighted photographs similar in quality and popularity to the Work is approximately $1,500 per year, per photograph."  DE 16-1 ¶ 12.  Mr. Stevens also swore to the Court that DiTommaso "has never been licensed to use the Work for any purpose."  DE 16-1 ¶ 13.  Further, Mr. Stevens swore to the Court that "[t]hrough my counsel, I notified Defendant of the allegations set forth herein in October 2021.  To date, I have been unable to resolve the dispute and Defendant has offered nothing to compensate AAP for the use of the Work."  DE 16-1 ¶ 16.

### C.    AAP's Complaint and Motion for Default Judgment Were Filed Without Any Legal or Factual Basis and Without Article III Standing.

As set forth in the attached Declaration of Nickolas L. DiTommaso ("Ditommaso Declaration" or "DiTommaso Decl.", including incorporated exhibits), AAP's claim in this action is (1) not connected to any act of Mr. DiTommaso, (2) the claim is one that AAP threatened against Mr. DiTommaso's former broker, and then received the license fee contractually called for by a prior settlement agreement, (3) AAP then dropped its threat against the broker and instead filed this lawsuit, and (4) the filing of the action occurred while Mr. DiTommaso was recovering from nearly dying of COVID-19, and was mentally disabled at the time.

AAP's complaint and motion for default judgment against *Mr. DiTommaso* are based solely and exclusively on AAP's copyright being allegedly infringed on *a third-party Realtor.com webpage*.  DE 1 ¶¶ 17-19; DE 1 p.13 (Ex. B); DE 16 pp. 4-5 (¶¶16-18), p. 8 ("Here, the screenshots of *Defendant's Realtor.com profile page* unequivocally show Defendant's copying of the Work.");

3

*see also* DiTommaso Decl. ¶¶ 4-5, 7-8, 23-33.  Mr. DiTommaso does not own, operate, or control that website or webpage.  DiTommaso Decl. ¶¶ 8, 23-33; *see also* DE 1 p. 13.  The Realtor.com webpage includes indications that Realtor.com sourced material that was displayed on that webpage, rather than it being provided by any person; it was not provided by Mr. DiTommaso. DiTommaso Decl. ¶¶ 8, 23-33.

AAP's assertion, through its counsel, that "All content on the profile page – including the image at the top of the page – was published by Defendant by logging into his Realtor.com account and providing updates/changes thereto," is demonstrably false and expressly disproved by merely *viewing* the accused Realtor.com webpage.  DiTommaso Decl. ¶¶ 8, 23-33.

Contrary to Mr. Stevens's sworn statement to the Court, before filing this action, the claim against Mr. DiTommaso had been released, *and* AAP had accepted[1] the contractually required $500 licensing fee from DiTommaso's former broker, AM-PM Investments 2 LLC d/b/a RE/MAX Properties ("RE/MAX").  DiTommaso Decl. ¶¶ 18-19, 34; *see also* Ex. D to DiTommaso Decl. Neither AAP, Mr. Stevens, nor AAP's counsel informed the Court that the *actual* license fee for this image was merely a one-time $500 fee, and that it was paid before the action was filed. *Compare* DiTommaso Decl. ¶¶ 8, 23-33 *with* DE 16 pp. 10-13 (arguing that a "comparable" license would be $1,500 *per year*); DE 16-1 ¶ 12 (asserting same).

### D. Mr. DiTommaso's "Default" in the Underlying Proceedings.

This matter began on October 21, 2021, when AAP sent a cease-and-desist letter to DiTommaso and RE/MAX, alleging that DiTommaso controlled the Realtor.com website, that he published AAP's Work on *his* Realtor.com website, and that DiTommaso and RE/MAX were liable for copyright infringement.  DiTommaso Decl. ¶¶ 2-5.  DiTommaso was given assurances from RE/MAX that it would handle the case on his behalf using its own counsel.  DiTommaso Decl. ¶ 6; *see also id.* ¶¶ 10-15.

At the time DiTommaso received the cease-and-desist letter, he was disabled and recovering from nearly dying from contracting COVID-19.  DiTommaso Decl. ¶¶ 9-16. DiTommaso was hospitalized in January 2021 for over two (2) months before he miraculously

---

[1] As reflected in the November 17, 2021, letter from RE/MAX to AAP and CopyCat, RE/MAX tendered the $500 payment to AAP.  Ex. D to DiTommaso Decl.  When filing the Complaint, AAP and CopyCat did not include RE/MAX as a defendant, reflecting that RE/MAX's contractual payment was accepted by AAP.

survived and was then transferred to a rehabilitation facility for over a month before being released to finally return home.  DiTommaso Decl. ¶¶ 9-10.  That time in the hospital, however, resulted in his muscles atrophying to the point that he could not even raise his hand or walk.  DiTommaso Decl. ¶¶ 9-10.  He was both physically and mentally unable to deal with AAP's cease-and-desist letter when it was received—and it was a welcome relief when his broker at RE/MAX assured him that RE/MAX would handle AAP's threats.  *See* DiTommaso Decl. ¶¶ 11-12.

DiTommaso relied on those representations that RE/MAX and its counsel would handle this matter as he continued his recovery throughout the entire year of 2022.  DiTommaso Decl. ¶¶ 12-13.  Much of this time was spent face down in bed recovering from additional bed wounds that had become infected as a result of his time in the hospital.  DiTommaso Decl. ¶ 15.  As a consequence of his extensive hospitalization and rehabilitation, his medical bills built up depleting his finances; the physical and mental stress of his illness prevented him from being able to address the matters from AAP and he relied on the constant assurances from RE/MAX that its counsel was handling the matter.  DiTommaso Decl. ¶¶ 13-16.

It was not until AAP began attempting to execute the default judgment, in May of 2023— over one (1) year after the default judgment was entered—that DiTommaso began to understand the full extent of this action.  DiTommaso Decl. ¶ 17.  After attempting to reach out to AAP through its counsel at CopyCat Legal PLLC ("CopyCat"), DiTommaso was provided a copy of a letter RE/MAX sent to AAP on November 21, 2021, *before* this action was filed.  DiTommaso Decl. ¶ 18; Ex. D to DiTommaso Decl.  As reflected in RE/MAX's correspondence with CopyCat, RE/MAX had a pre-existing settlement agreement with AAP that released the claim in this case against both RE/MAX and DiTommaso, and RE/MAX tendered the require $500.00 one-time payment necessary for addressing any alleged infringement.  DiTommaso Decl. ¶ 19; Ex. D to DiTommaso Decl.

At the beginning of October 2023, DiTommaso was put in touch with the Legal Aid Society of Palm Beach County, which connected him with counsel for this matter.  DiTommaso Decl. ¶ 20.  As a result, DiTommaso was able to quickly comply with the Court's discovery order, providing interrogatory responses and producing over 1,500 pages of documents requested by AAP.  DiTommaso Decl. ¶ 20.  Finally having assistance of counsel, DiTommaso was able to review the allegations in the Complaint and the incorporated evidence to discover that AAP and CopyCat fabricated allegations against DiTommaso that were material to both bringing the action

and moving the default judgment—allegations which were *directly contradicted* by the evidence incorporated into the Complaint and relied upon in the Complaint and motion for default judgment. DiTommaso Decl. ¶¶ 21-34.

## ARGUMENTS

I.   **THE DEFAULT JUDGMENT SHOULD BE VACATED AND THE DEFAULT SET ASIDE.**

As established through the DiTommaso Declaration, AAP's allegations in the complaint, its attorney's arguments to the Court in the motion for default judgment, and Mr. Stevens's sworn statements were knowingly false and materially misleading.  AAP and its counsel knowingly misrepresented material facts to the Court both in bringing the action and in seeking a default judgment.

Federal Rule of Civil Procedure 55(c) allows a court to set aside a default judgment as provided by Rule 60(b).  "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts." *Federated Life Ins. Co. v. Fifth Third Bank*, Case No. 2:14-cv-568-FtM-38CM, 2017 U.S. Dist. LEXIS 47260, *10 (M.D. Fla. Mar. 30, 2017) (quoting *Stansell v. Revolutionary Armed Forces of Columbia*, No. 8:09-cv-2308, 2013 U.S. Dist. LEXIS 198752, 2013 WL 12132057, *3 (M.D. Fla. Apr. 29, 2013)); *see also Waddell v. Hemerson*, 329 F.3d 1300, 1309 (11th Cir. 2003). Additionally, Rule 60(d)(3) allows a party to bring a separate action for relief from a judgment when, as here, there is fabrication of evidence by a party in which its attorneys are implicated.  *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).[2]

AAP never had standing to file this action because it was based *solely* on third-party conduct and because it had no cognizable injury in fact.  *Infra* §§ I.A., II.  AAP had already released the claim against DiTommaso and accepted a full and complete resolution of the claimed injury *before* the suit was filed.  *Infra* § I.B.  AAP and its counsel perpetrated a fraud on the Court by filing and maintaining this action.  *Infra* § I.C. And finally, the interests of justice require vacating the default judgment, setting aside the default, and dismissing the action, now that DiTommaso has recovered enough to have been able to obtain competent counsel that can protect his interests and show that there was both no factual basis for this case to have been filed and no non-frivolous legal theory advanced by AAP and its counsel.  *Infra* § I.D.

---

[2] Adopted as precedent as stated in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

In light of a deeper look at the facts presented by AAP and its counsel, the Court should set aside the Default and Default Judgment under Fed. R. Civ. P. 55(c) and vacate the Judgement under either Rule 60(b)(4)-(6), Fed. R. Civ. P. and setting aside the Clerk's Default for good cause.

### A. The Default Judgment Should be Vacated as Void Because the Court Lacked, and Lacks, Article III Jurisdiction.

The Default Judgement, DE 18, should be vacated as void pursuant to Rule 60(b)(4), Fed. R. Civ. P. "Federal courts are courts of limited jurisdiction." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The most notable—and most fundamental—limits on the federal 'judicial Power' are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of 'Case' and 'Controversies.'" *Ibid.* (citing U.S. Const. art III, § 2). "This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Ibid.* (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)).

Further, as explained by the Supreme Court, federal courts must *presume* a cause lies outside the limited jurisdiction of the federal courts until a plaintiff satisfies its burden. *Kokkonen*, 511 U.S. at 377 ("**It is to be presumed that a cause lies outside this limited jurisdiction**, *Turner v. Bank of North-America*, 4 U.S. 8, 4 Dall. 8, 11, 1 L. Ed. 718 (1799), **and the burden of establishing the contrary rests upon the party asserting jurisdiction**, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183, 80, L. Ed. 1135, 56 S. Ct. 780 (1936).") (emphasis added). The Eleventh Circuit has reiterated that burden, explaining that "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of jurisdiction." *McCormick v. Alderholt*, 962 F.3d 1254, 1257 (11th Cir. 2002).

A judgment is not void "simply because it is or may have been erroneous." *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (internal quotation marks omitted). "Instead, Rule 60(b)(4) applies only in the rare instance where the judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271; *see also Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1319 (11th Cir. 2001) ("A judgment is 'void' under Rule 60(b)(4) if it was rendered without jurisdiction of the subject matter or the parties or in a manner inconsistent with due process of law.").

Here, the judgment was entered without subject matter jurisdiction because AAP filed this action without standing: the alleged infringing conduct was based *solely* on third-party conduct, i.e., the third-party Realtor.com website. In *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1304-05 (11th Cir. 2019) (en banc), the Eleventh Circuit addressed that when a plaintiff sues a defendant based on conduct of a third party, the plaintiff cannot satisfy the traceability and redressability prongs of article III standing and jurisdiction. AAP's complaint provides evidence that the third-party Realtor.com website contains an image that AAP asserts as an infringement. Lacking evidence to connect to DiTommaso, AAP merely asserts that the webpage is "his" webpage—an allegation expressly contradicted by the evidence in the complaint. *See* DE 1 p. 13; *see also* DiTommaso Decl. ¶¶ 21-34.

Even a simple review of the accused webpage shows that it cannot be used to make any allegations against *DiTommaso*, regardless of whether the webpage indicates infringement by Realtor.com. *See* DiTommaso Decl. ¶¶ 21-34. The webpage is not owned, operated, or controlled by DiTommaso, and the webpage itself indicates that material on that page is not user-generated, but "sourced" by Realtor.com. *Ibid.* This is not enough to satisfy a plaintiff's *evidentiary burden* necessary to establish article III standing, and subject matter jurisdiction in federal court. *See Kokkonen*, 511 U.S. at 377; *see also McCormick*, 962 F.3d at 1257.

A similar issue was also recently addressed in the Northern District of Illinois in the case *Sun v. Partnerships and Unincorporated Assoc'ns Identified on Schedule A, et al.*, Case No. 1:19-cv-06281 (N.D. Ill.). In a minute order issued on October 10, 2023 (slip op. attached), the court *sua sponte* vacated a default judgment against certain defendants because the allegations in the complaint and exhibits failed to show any liability for the named defendants. *Sun*, slip. Op. at 1. In *Sun*, the plaintiff "cited a spreadsheet prepared by Wish.com, which list[ed] the [d]efaulted [d]efendants as the 'Merchant Real Person Name' for the respective internet stores." *Ibid.* The court identified that "this does not show ownership. Even if the [d]efaulted [d]efendants were somehow associated with the or working with the Internet Stores, and were the ones to register the Internet Stores with Wish.com, that does not confer personal liability." *Ibid.*

The court in *Sun* also looked at declarations submitted by the plaintiff, but identified that they "at most show that the [d]efaulted [d]efendants were a business liaison, general manager, chairman of the board, shareholder, legal representative, or executive director of the respective Internet Store, but, again, were not the owner or sole proprietor." *Ibid.* The court correctly

recognized that merely being "associated with" a given infringing webpage (or, "Internet Store") is not sufficient for liability or damages. *Ibid.*

AAP has never had any basis to bring its claim against DiTommaso, as established both by AAP's complaint and DiTommaso's declaration. The webpage is not "fairly traceable" to conduct by DiTommaso. As such, the Court did not have subject matter jurisdiction to enter the default judgment, rendering it void. The judgment should therefore be vacated pursuant to Rule 60(b)(4), Fed. R. Civ. P.

### B. The Default Judgment Should be Vacated Because AAP's Claim and the Judgment Was Satisfied, Released, and Discharged.

Separately, the Default Judgement, DE 18, should be vacated pursuant to Rule 60(b)(5), because the claim was satisfied, released, or discharged, it was based on a claim released by an earlier settlement, and applying it prospectively is no longer equitable. Relief under Rule 60(b)(5) when a judgment has been satisfied, released, or discharged. Fed. R. Civ. P. 60(b)(5). The Eleventh Circuit has also agreed with other courts that motions for relief under Rule 60(b)(5) are appropriate when seeking credit against all or part of a judgment for the amount paid by a settling co-defendant. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1274-75 (11th Cir. 2008).

Here, the claim and judgment against DiTommaso was satisfied, released, and discharged by RE/MAX. AAP *originally* threatened infringment claims against both DiTommaso and RE/MAX based on the fabricated claim that DiTommaso owns the Realtor.com website. DiTommaso Decl. ¶¶ 2-5, 23-34; Ex. B to DiTommaso Decl., pp. 9-10, ¶¶ 17-19 (draft compl.); *see also* DE 1 ¶¶ 17-19. After that original threat, RE/MAX identified to AAP and its counsel that the claim had been fully and completely released through an earlier settlement agreement between RE/MAX and AAP, requiring only that RE/MAX tender a mere $500 one-time fee to AAP under the terms of the existing agreement. DiTommaso Decl. ¶¶ 18-22, 34; Ex. D to DiTommaso Decl. Though the claim against DiTommaso had been satisfied and released, AAP nevertheless filed the instant action, and moved for default judgment, by misrepresenting these facts to the Court. *See* DiTommaso Decl. ¶¶ 18-34; Ex. D to DiTommaso Decl.; *see also id.* Ex. B; *cf.* DE 1, DE 16.

AAP's claim against DiTommaso was released by RE/MAX's earlier settlement agreement, and the only remaining requirement was for RE/MAX to tender the $500 fee. Ex. D to DiTommaso Decl. That payment was tendered by RE/MAX and, apparently, accepted by AAP. DiTommaso Decl. ¶ 34; Ex. D to DiTommaso Decl. Accordingly, the Court should vacate the

default judgment because it was satisfied, released, and/or discharged by AAP.  *See* Fed. R. Civ. P. 60(b)(5).

### C.   The Default Judgment Should be Vacated for Fraud on the Court.

Additionally, the Default Judgment, DE 18, should be vacated pursuant to Rule 60(d)(3) due to AAP's and its counsel's fraud on the Court.  A litigant may bring an independent action for relief under Rule 60(d), formerly the savings claim of Rule 60(b), which allows a district court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).  To obtain such relief, the movant must establish "fraud on the court" by clear and convincing evidence of egregious misconduct.  *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).  The movant must also establish that the adverse party obtained the verdict through fraud and employed an "unconscionable plan or scheme" to improperly influence the decision of the district court.  *Rozier*, 573 F.2d at 1338.  Generally, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."  *Ibid.*

Here, AAP's and CopyCat Legal's fraud on the Court is that "most egregious misconduct" addressed by the Former Fifth Circuit in *Rozier*—the "fabrication of evidence in which an attorney is implicated." *See ibid.*  CopyCat and AAP were aware that there was no legitimate basis to bring this claim, yet did so by fabricating evidence and allegations known by both AAP and CopyCat to be false; counsel at CopyCat then relied on that fabricated evidence and allegations to misrepresent the facts to the Court and obtain an invalid default judgment.

On November 17, 2021—approximately seven (7) weeks prior to filing this action, attorneys Messrs. DeSouza and D'Loughy at CopyCat Legal PLLC were notified that AAP had released the claims against RE/MAX and DiTommaso.  Ex. D to DiTommaso Decl.  From that correspondence, it appears that counsel at CopyCat refuted that Mr. DiTomasso was not an employee or independent contractor of RE/MAX when that earlier settlement was entered into. *See ibid.*  But CopyCat was notified that DiTommaso had been a realtor with RE/MAX since September 8, 2015, "predating the Settlement by almost an entire calendar year." *Ibid.*

Seven weeks later, AAP and CopyCat modified their fabricated allegations and filed this action, falsely alleging without any evidence (1) that "Defendant [DiTommaso] maintains a profile page on Realtor.com"; (2) that "All content on the profile page – including the image at the top of the page – was published by Defendant [DiTommaso] by logging into his Realtor.com account

10

and providing updates/changes thereto; (3) that it was "DiTommaso's Website"; and (4) that DiTommaso was the one that published the image. DE 1 ¶¶ 17-20. AAP and CopyCat then went further, alleging that "Defendant has not and has never been licensed to use or display the Work," despite knowing for a fact that any conduct by DiTommaso while with RE/MAX *was licensed* through the earlier settlement agreement. *Compare* DE 1 ¶ 21 *with* Ex. D to DiTommaso Decl. Moreover, AAP and CopyCat alleged that "Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use. To date, Plaintiff has been unable to negotiation a reasonable license for the past infringement of its Work." DE ¶ 24. AAP and CopyCat knew, for a fact, that this allegation was factually false and legally frivolous—yet asserted it because it was material to deceiving the Court into granting the default judgment. *See, e.g.*, DE 1 ¶ 24; DE 16 pp. 9-10 (arguing willfulness based on this misrepresentation); *id.* pp. 10-15 (arguing damages based on this misrepresentation); DE 16-1 ¶ 16 (Mr. Stevens of AAP stating under oath "To date, I have been unable to resolve the dispute and Defendant has offered nothing to compensate AAP for the use of the Work.").

AAP and CopyCat knowingly and intentionally fabricated evidence and made assertions of fact that *both* knew to be false. This is the type of intentional fraud on the court that Rule 60(d)(3) is meant to address. *See Rozier*, 573 F.2d at 1552 (identifying "fabrication of evidence by a party in which an attorney is implicated" as being the type of "the most egregious misconduct" warranting relief under Rule 60(d)(3)).

Accordingly, the default judgment should be vacated under Rule 60(d)(3), Fed. R. Civ. P., for AAP's and CopyCat's knowing and intentional fraud on the Court.

**D.    The Default Judgment Should be Vacated in the Interest of Justice.**

The Default Judgment, DE 18, should also be vacated pursuant to Rule 60(b)(6) in the interests of justice. A district court "may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason" not covered by the rest of Rule 60(b) "that justifies relief." Fed. R. Civ. P. 60(b)(6). Here, as set forth in the declaration of DiTommaso, though he did "default" in this matter, that occurred while he was mentally and physically unable to address this matter and he was being told that RE/MAX and its counsel were defending this matter on his behalf. DiTommaso Decl. ¶¶ 2-19. After AAP and CopyCat obtained the default judgment, they delayed for over one (1) year before attempting to enforce the judgment. *See id.* ¶ 17. Upon finally realizing the extent of this matter, DiTommaso was able to obtain counsel and has been moving

expeditiously to comply with the Court's discovery order and address the conduct by AAP and CopyCat. *Id.* ¶¶ 20-37.

The Court should grant relief under Rule 60(b)(6) because there are myriad deficiencies with this case and with the conduct of AAP and its counsel in bringing and maintaining the action, and now in attempting to collect on the void judgment, obtained through AAP's and its counsel's knowing and intentional fraud on this Court.

### E. The Default Judgment Should be Modified in the Interest of Justice Because the Court Impermissibly Awarded *Both* Statutory Damages *and* Actual Damages, When Those Damages Are Only Available in the Alternative.

Finally, to the extent that the Court does not vacate the Default Judgment, DE 18, based on the reasons *supra*, the Court should modify the Judgment pursuant to either Rule 60(b)(4) or 60(b)(6) because the Court entered an award beyond its power under the Copyright Act—it awarded *both* statutory damages *and* actual damages, when such damages are only awardable in the alternative. *See* 17 U.S.C. § 504(a) (authorizing *either* actual damage *or* statutory damages).

Here, the Court erred by granting AAP *both* actual damage *and* statutory damages. DE 18. But the Copyright Act does not authorize *both* types of damages. 17 U.S.C. § 504(a). The Court therefore granted relief it was not authorized to grant under the Copyright Act, making the award either void under Rule 60(b)(4) as exceeding the scope of the Court's authority or requiring relief under Rule 60(b)(6) in the interest of justice.

### II. THE ACTION SHOULD BE DISMISSED FOR A LACK OF ARTICLE III JURISDICTION.

The action should also be dismissed because AAP lacks article III standing to pursue this claim against DeTommaso and the Court lacks article III jurisdiction over AAP's claim. "Article III of the United States Constitution limits the 'judicial Power'—and thus the jurisdiction of the federal courts—to 'Case' and 'Controversies.'" *Lewis*, 944 F.3d at 1296 (quoting U.S. Const. art. III, § 2); *Gardner*, 962 F.3d at 1338 (quoting same). The Eleventh Circuit has explained that standing is the most important, or most central, prerequisite of article III jurisdiction. *Gardner*, 962 F.3d at 1337. "The 'standing' doctrine is 'an essential and unchanging part of the case-or-controversy requirement." *Lewis*, 944 F.3d at 1296 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)); *Gardner*, 962 F.3d at 1338.

Standing, and thus article III jurisdiction, requires:

(1) "an 'injury in fact'—and invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) "a 'causal connection' between [the plaintiff's] injury and the

challenged action of the defendant"; and (3) a "likel[ihood], not merely speculate[on], that a favorable judgment will redress [the] injury."

*Gardner*, 962 F.3d at 1338 (quoting *Lewis*, 944 F.3d at 1296) (alterations in *Gardner*); *see also Lujan*, 504 U.S. at 560–61. And "[b]ecause standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to the merits of her claim, no matter how weighty or interesting." *Gardner*, 962 F.3d at 1338–39 (quoting *Lewis* 944 F.3d at 1296); *accord Swann v. Sec'y*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claim.").

A court's article III subject matter jurisdiction can be attacked either "facially" of "factually." *Gardner*, 962 F.3d at 1340. "'Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint,' whereas '[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Ibid.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)). When jurisdiction is factually attacked a court "needn't accept the plaintiff's facts as true; rather, 'the district court is free to independently weigh facts' and make the necessary findings." *Ibid.* (quoting *Morrison*, 323 F.3d at 925).

AAP did not—and cannot—satisfy its burden to establish standing and, in turn, the Court's article III jurisdiction. As the Supreme Court explained, courts must *presume* a cause lies outside the limited jurisdiction of the federal courts until a plaintiff satisfies its burden. *Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of North-America*, 4 U.S. 8, 4 Dall. 8, 11, 1 L. Ed. 718 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 182-183, 80, L. Ed. 1135, 56 S. Ct. 780 (1936)."). The Eleventh Circuit has reiterated that burden, explaining that "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of jurisdiction." *McCormick*, 962 F.3d at 1257. Moreover, "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (Scalia, J.)

When jurisdiction does not exist at the time a suit is filed, that suit is a legal nullity which requires dismissal; amendment cannot cure a jurisdictional defect which exists at the time the action was filed. *See, e.g.*, *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2005) ("[I]f the district court actually lacked jurisdiction . . . , the court would have lacked the power to

13

dismiss . . . with prejudice."); *In re Engle Cases*, Case No. 3:09-cv-10000-J-32JBT, 2013 U.S. Dist. LEXIS 186429, *18-30 (M.D. Fla. Jan. 22, 2013) (recognizing a case filed in the name of the wrong party is a legal nullity because jurisdiction was lacking at the time the suit was filed; such proceedings are void *ab initio* and require dismissal); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (reversing the denial of the motion to dismiss because "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured after inception of the lawsuit.") (internal quotations omitted); *Live Entm't, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1279–80 (S.D. Fla. 2003) (holding that because the named plaintiff did not suffer an injury in fact, it lacked standing to bring the action and lacked standing to make a motion to substitute the real party in interest).

AAP's Complaint—facially and factually—fails to establish the "irreducible constitutional minimum" required to satisfy the "case or controversy" requirement in article III. *See Lujan*, 504 U.S. at 560.

A.   **AAP's Complaint, Addressing Conduct Solely Based on a Third-Party's Website, Does Not Satisfy the Traceability and Redressability Requirements for Article III Jurisdiction.**

Facially and factually, AAP's Complaint fails to satisfy the "traceability" and "redressability" prongs for article III jurisdiction because the allegations relate solely to third-party conduct with only a conclusory inference that DiTommaso is *somehow* related to the complained-of conduct.   *See* DE 1 ¶¶ 17-19.   No conduct in the Complaint relates to conduct by the *Defendant*—Mr. Nickolas L. DiTommaso—and therefore, the Complaint fails to raise an article III case or controversy regarding Defendant DiTommaso.

AAP was aware of this fundamental deficiency, acknowledging in the complaint that Realtor.com was the website of a third-party.   DE 1 ¶ 17.   AAP and its counsel then proceeded to *refer* to the third-party webpage as "**his** Realtor.com profile page," knowingly misrepresenting the evidence attached to the complaint.   DE 1 ¶¶ 18-19 (emphasis added).   AAP attempted to avoid this issue by falsely asserting—contrary to the evidence it provided—that "All content on the profile page – including the image at the top of the page – was published by Defendant by logging into his Realtor.com account and providing updates/changes thereto."   DE 1 ¶ 18.   AAP provided no evidence for its conclusory assertion, and the webpage *itself* expressly contradicts AAP's assertion.   DiTommaso Decl. ¶¶ 21-34 (showing the complete Realtor.com webpage, showing that content on the page is "sourced" by Realtor.com); Ex. E to DiTommaso Decl.

14

Article III jurisdiction is that threshold; it implicates whether a federal court has the Power to hear the action. To bring claims in federal court, a plaintiff must first establish the existence of a "case or controversy." *Gardner*, 962 F.3d at 1336. There are three elements to Article III jurisdiction, (1) the plaintiff must have standing, (2) the issue must be ripe, and (3) the issue must not be moot. *Ibid.* Of the three, standing is paramount, because whereas ripeness and mootness are temporal, "standing doesn't arise and evanesce; rather 'it limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Id.* at 337 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

The Eleventh Circuit has clarified, however, that "'[b]ecause standing to sue implicates jurisdiction, a court *must* satisfy itself that the plaintiff has standing to sue before proceeding to consider the merits of her claim, no matter how weighty or interesting.'" *Gardner*, 962 F.3d at 1338-39 (quoting *Lewis*, 944 F.3d at 1296) (emphasis added in *Gardner*). The Eleventh Circuit addressed in *Gardner* that "[i]ndeed, the Supreme Court has expressly condemned the exercise of so-called "'hypothetical jurisdiction" that enables a court to resolve contested questions of law when its jurisdiction is in doubt.'" 362 F.3d at 1339 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

AAP was required to establish article III standing when it filed the complaint. Instead, it provided evidence demonstrating that the lawsuit was filed improperly against DiTommaso based on third-party conduct by Realor.com. DE 1 ¶¶ 17-19; *id.* p. 13. AAP failed in its basic obligation to show that it brought the action against the proper defendant. *See Gardner*, 362 F.3d at 1338-41. AAP was required to establish that there is a causal connection between its alleged injury— infringement on the third-party Reator.com website—and challenged action by the Defendant DiTommaso. *See Gardner*, 362 F.3d at 1338; *see also Lewis*, 944 F.3d at 1296; *Lujan*, 504 U.S. at 560-61. To do so, AAP was required to provide some *evidence* to connect the alleged infringment on the third-party Realtor.com website specifically to the Defendant DiTommaso; it did not. Rather, it showed only that there was an alleged infringement by third-party Realtor.com. DE 1 ¶¶ 17-19; *id.* p. 13.

Before bringing this action, AAP and its counsel was required to investigate AAP's claim to ensure that there was a reasonable factual basis for asserting the claim against DiTommaso and that the claim was based on a legal theory that had the possibility of success; not only is that a basic requirement for establishing jurisdiction in federal court, but the failure to have done that

basic inquiry can potentially subject AAP and its counsel to sanctions. *See Jones v. Int'l Riding Helmets*, 49 F.3d 692, 694-95 (11th Cir. 1995). Nevertheless, AAP did not present *any* evidence to establish standing, and merely misrepresented the acts of a third-party as the acts of DiTommaso—contrary to the very evidence it cited. *See* DE 1 ¶¶ 17-19; *see also* DE 1-2.

As set forth in the attached declaration, DiTommaso has never created, owned, operated, or controlled the accused Realtor.com webpage. DiTommaso Decl. ¶¶ 8, 23-34. Further, even a basic investigation of the Realtor.com website shows that AAP has no basis to fabricate allegations that DiTommaso is responsible for "all" content on that webpage—since the page itself expressly states otherwise. DiTommaso Decl. ¶¶ 23-34; *cf.* DE 1 ¶ 18 ("All content on the profile page – including the image at the top of the page – was published by Defendant by logging into his Realtor.com account and providing updates/changes thereto."). Under these circumstances, the causation and redressability components of standing are not satisfied. *Lewis*, 944 F.3d at 1304-05. As such, AAP lacks standing and the Court lacks jurisdiction; the action should be dismissed.

### B.    AAP Has Not Suffered an Injury-in-Fact.

"No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. C.t 2190, 2214 (2021) (Kavanaugh, J.). Even where a defendant has violated a statute that provides a plaintiff a cause of action, without a concrete harm caused by the defendants' violation of the statute, there is no standing, and the federal courts lack jurisdiction. *See id.* at 2205-06. As the Court explained in *TransUnion*, "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 2205. "As then-Judge Barret succinctly summarized, 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.'" *Ibid.* (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barret, J.)).[3]

But "under Article III, an injury in law is not an injury in fact." *Ibid.* "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Ibid.*

Facially, AAP alleged harm based on the alleged loss of a license fee for the alleged infringement of its copyright. But factually, AAP and CopyCat knowingly and intentionally

---

[3] The *Casillas* opinion was authored by now-Justice Barret when she was a Circuit Judge for the Seventh Circuit Court of Appeals.

withheld from the Court that no such harm existed; AAP and CopyCat knowingly and intentionally misrepresented the *facts* by withholding from the Court that RE/MAX had previously settled with AAP for a release that covered this alleged infringement, and AAP accepted from RE/MAX the contractual $500 fee required by that settlement.  *See* Ex. D to DiTommaso Decl.; *see also* DiTommaso Decl. ¶¶ 2-6, 18-34.

AAP has suffered no harm, much less any "concrete" harm, from the conduct forming the basis of this action.  AAP never had standing to have filed this action and the Court should dismiss it for lack of standing under Fed. R. Civ. P. 12(b)(1).  AAP and CopyCat knowingly and intentionally wasted this Court's time and resources pursuing a case that should never have been filed.

## CONCLUSION

Considering the forgoing, Defendant respectfully requests that this Court vacate the default judgment, DE 18, set aside the clerk's default, DE 8, and dismiss the complaint, DE 1.  AAP and CopyCat filed an action without standing, intentionally misrepresenting facts to the Court and fabricating allegations to obtain a void judgment that was already satisfied, released, and discharged.  In so doing, AAP and its attorneys at CopyCat committed fraud on the Court, knowingly and intentionally submitted fabricated allegations and false testimony.

Pursuant to Fed. R. Civ. P. 55(c), 60(b)(4)-(6), and 60(d)(3), the judgment should be vacated.  Pursuant to Fed. R. Civ. P. 12(b)(1) the action should be dismissed.  The Court should also consider whether any additional sanctions are appropriate and necessary to prevent this type of conduct by AAP and CopyCat from reoccurring.

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7.1(a)(3)

Prior to filing this motion, counsel for the Defendant conferred with counsel for the Plaintiff in a good-faith effort to resolve the issues raised in this motion on October 12, 2023, but were unable to agree to a resolution.

Respectfully submitted,

**Andrew D. Lockton**
Edward F. McHale
Florida Bar Identification Number 190300
Andrew D. Lockton
Florida Bar Identification Number 115519

MᴄHᴀʟᴇ & Sʟᴀᴠɪɴ, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:      (561) 625-6575
Facsimile:      (561) 625-6572
Email:          litigation@mchaleslavin.com

*Attorneys for Defendant Nickolas L. DiTommaso*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendant's Motion to Vacate the Default Judgment, Set Aside the Clerk's Default, and to Dismiss the Action for Lack of Article III Jurisdiction, with Incorporated Memorandum of Law was filed electronically with the Court on October 23, 2023, and thereby served on counsel of record for the Plaintiff on the same day.

*/s/Andrew D. Lockton*
Andrew D. Lockton, Esq.